**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VICTOR WADE and KAREN LOCH, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>GPB CAPITAL HOLDINGS, LLC, GPB HOLDINGS II, LP, GPB AUTOMOTIVE PORTFOLIO, LP, DAVID GENTILE, ROGER ANSCHER, WILLIAM JACOBY, and DOES 1-100,<br><br>             Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Victor Wade and Karen Loch, on behalf of themselves and all others similarly situated, bring this Class Action Complaint against Defendants GPB Capital Holdings, LLC, GPB Holdings II, LP, GPB Automotive Portfolio, LP, David Gentile, Roger Anscher, William Jacoby, and Does 1-100 and alleges as follows:

## I.   NATURE OF THE ACTION

1.     GPB Capital Holdings, LLC ("GPB Capital") is the general partner of several investment funds and has raised over $1.5 billion from investors.  Plaintiffs and the other Class members are limited partners of two of these funds, GPB Holdings II, LP ("GPB Holdings II") and GPB Automotive Portfolio, LP ("GPB Automotive") (together, the "Funds").

2.     Plaintiffs invested in these Funds pursuant to private placement memoranda ("PPMs") that contained limited partnership agreements.  These agreements obligate Defendants

1

to provide the limited partners with audited financial statements regarding the Funds on an annual basis.  In 2018 and thus far in 2019, Defendants have not provided these audited financial statements.  Defendants' failure to provide timely and accurate financial statements violates Defendants' obligations to Plaintiffs and each member of the Class, and has prevented and continues to prevent Plaintiffs from obtaining necessary information about the status of their investments and taking such action as may be appropriate to avoid or mitigate any potential investment losses.

3.      Plaintiffs seek to compel Defendants to comply with their obligation to provide timely and accurate financial statements because Defendants have been accused of accounting irregularities and other improprieties in their operations.  In November 2018, Defendants' auditor resigned, and in February 2019, the Federal Bureau of Investigation ("FBI") and the New York City Business Integrity Commission raided Defendants' Manhattan office.  The United States Securities and Exchange Commission ("SEC") and the Financial Industry Regulatory Authority ("FINRA") have also reportedly opened investigations into Defendants' investment operations and conduct.  Through their counsel, Plaintiffs continue to investigate the allegations against Defendants, as they call into question the accuracy and completeness of the disclosures made by Defendants and their selling agents relating to Plaintiffs' investments in the Funds, and Plaintiffs intend to bring legal action against Defendants and their agents if Defendants do not provide full, complete and satisfactory financial reports.

## II.    <u>JURISDICTION AND VENUE</u>

4.      This Court has subject matter jurisdiction over the state law claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, and 1711-1715 because this is a class action in which there are over 100 members of the Class (as defined herein); the matter in

controversy exceeds the sum of $5,000,000, exclusive of interest and costs; and Plaintiffs and other Class members are citizens of a state different from that of one of the Defendants.

5.      Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendants transact business in this judicial district and maintain their principal place of business in this district.

6.      This Court has personal jurisdiction over each Defendant because, among other things, each Defendant, directly, or through its directors, officers, employees, representatives, agents, and/or affiliates sold the subject investments throughout the United States, including in this judicial district, and has sufficient contacts with this district to make the Court's exercise of personal jurisdiction proper and necessary.

## III.    PARTIES AND RELEVANT ENTITIES

### A.    Plaintiff

7.      Plaintiff Victor Wade is a citizen and resident of the State of Texas.  In or about December 2016, he invested $50,000 in GPB Holdings II.  He made his investment through a securities broker-dealer, SagePoint Financial, Inc., a subsidiary of Advisor Group, Inc.

8.      Plaintiff Karen Loch is a citizen and resident of the State of Georgia.  On October 18, 2017, she invested $75,000 in GPB Automotive.  She made her investment through a securities broker-dealer, Royal Alliance Associates, Inc., a subsidiary of Advisor Group, Inc.

### B.    Defendants

9.      Defendant GPB Capital Holdings, LLC is a Delaware limited liability company with its principal place of business located at 535 West 24th Street, New York, NY 10011.  GPB Capital Holdings, LLC is the general partner of Defendants GPB Holdings II, LP and GPB Automotive Portfolio, LP.

3

10.     Defendant GPB Holdings II, LP is a Delaware limited partnership with its principal place of business located at 535 West 24th Street, New York, NY 10011.

11.     Defendant GPB Automotive Portfolio, LP is a Delaware limited partnership with its principal place of business located at 535 West 24th Street, New York, NY 10011.

12.     Defendant David Gentile is a citizen and resident of the State of New York. Gentile is the founder and chief executive officer of GPB Capital.

13.     Defendant Roger Anscher is a citizen and resident of the State of New York. Anscher is the chief operating officer and general counsel of GPB Capital.

14.     Defendant William Jacoby is a citizen and resident of the State of New Jersey. Jacoby is the chief financial officer of GPB Capital.

15.     At all relevant times, Gentile, Anscher, and Jacoby dominated and controlled GPB Capital, GPB Holdings II, and GPB Automotive.

16.     The Doe Defendants are other persons or entities associated with Defendants who engaged in or abetted the conduct or breaches set forth in this complaint.  Plaintiffs intend to seek leave to amend their complaint upon learning the identity of the Doe Defendants.

**IV.     CO-CONSPIRATORS AND AGENTS**

17.     The unlawful acts and breaches of Defendants set forth in this complaint were authorized, ordered, or performed by Defendants and their respective directors, officers, agents, employees, or representatives, while actively engaged in the management, direction, or control of Defendants' business or affairs.

18.     Various persons and/or firms not named as Defendants may have participated as co-conspirators in the violations alleged in this complaint and may have performed acts and made statements in furtherance of such violations.

19.     Each Defendant acted as the principal, agent or joint venturer of, or for, other Defendants with respect to the acts, violations, and course of conduct alleged in this complaint.

20.     The agency relationships formed among the Defendants with respect to the acts, violations, and common course of conduct alleged in this complaint were consensually formed between the Defendant principals and agents.  Defendants' agents acted within the scope of their agency relationship with their own principals.  Defendants' agents acted under the explicit, implied, or apparent authority of their principals.  These acts include marketing and selling the subject investments pursuant to the PPMs.

21.     Further, Defendants acted on behalf of and were subject to the control of their principals, and they acted within the scope of authority or power delegated by their principals. Defendants' agents performed their duties within the scope of their agency, including in marketing and selling the subject investments pursuant to the PPMs.

22.     Accordingly, the Defendant principals are liable for the acts of their agents. Likewise, the Defendant agents are liable for the acts of their principals conducted by the agents within the scope of their explicit, implied, or apparent authority.

## V.   FACTUAL ALLEGATIONS

### A.   Defendants' Investment Business

23.     GPB Capital was formed in March 2013 by David Gentile.

24.     GPB Capital claims to be an alternative asset management firm that follows a "private equity" structure for its management of investment assets.  GPB Capital established at least ten investment funds, which were organized as limited partnerships.  GPB Capital, through securities broker-dealer firms, marketed and sold equity shares in the funds to investors.  The investors, such as Plaintiffs, bought into GPB funds as limited partners.  The general partner,

GPB Capital, acted as the asset manager.

25.     GPB Capital claims to have invested, through its funds, in automotive dealerships and waste management companies, among other businesses.

26.     GPB Capital investments, including in GPB Holdings II and GPB Automotive, are illiquid, high-commission and high-fee products.

**B.      The Controlling Limited Partnership Agreements**

27.     Plaintiff Wade's investment in GPB Holdings II is subject to an Amended Confidential Private Placement Memorandum for Class A Limited Partnership Units, dated March 7, 2016 ("Holdings II PPM").  The Holdings II PPM incorporates an Amended and Restated Agreement of Limited Partnership of GPB Holdings II, LP ("Holdings II LPA").

28.     The Holdings II LPA defines the General Partner as GPB Capital.

29.     The Holdings II LPA defines the Fiscal Year as the calendar year.

30.     Section 6.5 of the Holdings II LPA provides, in relevant part, that "[w]ithin 120 days after the end of each Fiscal Year, the General Partner will cause to be furnished to the Limited Partners a financial report for such Fiscal Year that includes the audited Financial Statements for such Fiscal year . . . ."

31.     Plaintiff Loch's investment in GPB Automotive is also subject to a private placement memorandum ("Automotive PPM") which incorporates a limited partnership agreement ("Automotive LPA").

32.     The Automotive LPA defines the General Partner as GPB Capital.

33.     The Automotive LPA defines the Fiscal Year as the calendar year.

34.     Section 6.5 of the Automotive LPA provides, in relevant part, that "[w]ithin 120 days after the end of each Fiscal Year, the General Partner will cause to be furnished to the

Limited Partners a financial report for such Fiscal Year that includes the audited Financial

Statements for such Fiscal year . . . ."

### C.   Defendants Breached the Limited Partnership Agreements

35.     Under the Holdings II LPA, Defendants were obligated to furnish Wade an

audited 2017 financial statement regarding GPB Holdings II by April 30, 2018.  Defendants have

not at any time furnished Wade an audited 2017 financial statement regarding GPB Holdings II.

36.     Under the Holdings II LPA, Defendants were obligated to furnish Wade an

audited 2018 financial statement regarding GPB Holdings II by April 30, 2019.  Defendants have

not at any time furnished Wade an audited 2018 financial statement regarding GPB Holdings II.

37.     Under the Automotive LPA, Defendants were obligated to furnish Loch an

audited 2017 financial statement regarding GPB Automotive by April 30, 2018.  Defendants

have not at any time furnished Loch an audited 2017 financial statement regarding GPB

Automotive.

38.     Under the Automotive LPA, Defendants were obligated to furnish Loch an

audited 2018 financial statement regarding GPB Automotive by April 30, 2019.  Defendants

have not at any time furnished Loch an audited 2018 financial statement regarding GPB

Automotive.

### D.   Defendants' Improper Conduct and Responses by Governmental and Other Entities

39.     Defendants' failure to fully and timely disclose the Funds' financial condition has

to date impaired Plaintiffs' ability to know the true facts required to assess the status of and take

actions required to protect their investments.

40.     Plaintiffs are investigating reports that Defendants fabricated earnings, falsified

financial statements, engaged in improper accounting practices, misappropriated investor funds, and used money from new investors to pay distributions to existing investors.  Allegations that Defendants engaged in such wrongdoing have been made in lawsuits brought by Defendants' former business partners and have also appeared in the financial press.

41.     Defendants have not registered their GPB investment offerings with the SEC. Through April 2017, Defendants marketed and sold GPB private placement securities without the need to register these offerings, as permitted under Regulation D of the Securities Act of 1933, 17 C.F.R. § 230.500 *et seq.*

42.     As of May 2017, each of the two Funds had more than 2,000 limited partners and assets in excess of $10 million.  As a result, Regulation 12g-1 under the Securities Exchange Act of 1934 required each Fund to register its securities with the SEC and to file an audited financial statement by April 30, 2018.

43.     GPB Capital acknowledged these obligations but, as to both Funds, missed its deadline to file the registration statements and audited financial statements required under the Act.  GPB Capital still has not filed any registration or financial statement with the SEC.

44.     Plaintiffs are investigating reports that GPB Capital has been unable to provide audited financial statements to the SEC and investors because its auditors refused to provide a clean audit opinion in view of undisclosed related-party transactions and other irregularities reflected in GPB Capital's books and records.

45.     In November 2018, GPB Capital's accountant, Crowe LLP, resigned purportedly based on its determination that its internal risk-tolerance parameters were exceeded by the activity reflected in GPB Capital's books and records.

46.     In February 2019, the FBI and the New York City Business Integrity Commission

raided GPB Capital's New York offices.

47.     On March 4, 2019, GPB Capital confirmed in a letter to investors that it was raided by law enforcement and has been under regulatory scrutiny since the summer of 2018. Similarly, a GPB Capital spokesman wrote in an email that "we have been cooperating with inquiries from various authorities and the visit on February 28, 2019 from the FBI and the New York City Business Integrity Commission, while unscheduled, was a part of that process."

48.     In June 2019 Fidelity Investments gave its broker-dealer clients a 90-day deadline to remove GPB Capital-issued private placements from the Fidelity platform.

49.     Additionally, reports have surfaced that the SEC and FINRA are investigating Defendants' conduct and operations.

50.     Through their counsel, Plaintiffs are investigating the allegations against Defendants, as they call into question the accuracy and completeness of the disclosures made by Defendants and their selling agents relating to investments in the Funds.  Plaintiffs intend to amend this complaint or bring independent legal action against Defendants and their agents if Defendants do not provide full, complete and satisfactory financial reports.

## VI.     CLASS ACTION ALLEGATIONS

51.     Plaintiffs bring this action pursuant to Rule 23(a), (b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

52.     The class is initially defined as investors who purchased equity shares in GPB Holdings II, LP or GPB Automotive Portfolio, LP, and who did not (i) sell all of their shares before May 1, 2018 without repurchasing shares thereafter, or (ii) purchase and sell all of their shares between May 1, 2018 and May 1, 2019 without repurchasing shares thereafter.

53.     Excluded from the Class are Defendants and their officers, directors,

management, employees, subsidiaries, or affiliates, and all judges assigned to this case and any members of their immediate families.

54.     The Class members are so numerous that joinder is impracticable.  Members of the Class are widely dispersed throughout the country.  The Class includes many hundreds of investors.

55.     Plaintiffs' claims are typical of the claims of all Class members.  Plaintiffs, like all Class members, purchased equity shares in GPB Holdings II, LP or GPB Automotive Portfolio, LP.  Plaintiffs and all Class member held the same contractual rights and were subject to the same material breaches.

56.     Plaintiffs will fairly and adequately protect and represent the interests of the Class.  Plaintiffs' interests are coincident with, and not antagonistic to, those of the Class.

57.     Plaintiffs are represented by counsel who are experienced and competent in the prosecution of investor fraud litigation, and who will adequately represent the Class.

58.     Questions of law and fact common to the Class members predominate over any questions that may affect only individual Class members, because Defendants have acted on grounds generally applicable to the entire Class.

59.     Questions of law and fact common to the Class include:

- Whether the limited partnership agreements governing investments in GPB Holdings II, LP and GPB Automotive Portfolio, LP required Defendants to furnish audited financial statements to Plaintiffs and Class members, with regard to the Fund in which they invested, for 2017 by April 30, 2018 and for 2018 by April 30, 2019;

- Whether Defendants furnished audited financial statements to Plaintiffs and

Class members, with regard to the Fund in which they invested, for 2017 by April 30, 2018 and for 2018 by April 30, 2019;

- Whether, by failing to furnish timely audited financial statements to Plaintiffs and Class members, or to otherwise advise them of the financial condition of the Funds in which they invested, Defendants breached fiduciary duties owed to Plaintiffs and Class members;

- The damage to Plaintiffs and Class members resulting from Defendants' breaches; and

- The appropriate remedy or remedies for Defendants' breaches.

60.     Class treatment is a superior method for the fair and efficient adjudication of the controversy, because, among other things, class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons and entities with a means of obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

61.     Class treatment also is appropriate under Rule 23(b)(1) and/or (b)(2) because:

- The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants;

- The prosecution of separate actions by individual Class members would create a risk of adjudication of their rights that, as a practical matter, would be

dispositive of the interests of other Class members not parties to such

adjudications or would substantially impair or impede other Class members'

ability to protect their interests; and

- Defendants have acted and refused to act on grounds that apply generally to

  the Class such that final injunctive relief and/or declaratory relief is warranted

  with respect to the Class as a whole.

62.     Plaintiffs know of no difficulty to be encountered in the management of this

action that would preclude its maintenance as a class action.

## VII.    CLAIMS FOR RELIEF

### Count I
### Breach of Contract

63.     Plaintiffs hereby incorporate each preceding and succeeding paragraph as though

fully set forth herein.

64.     The limited partnership agreements between Plaintiffs and the Class and

Defendants are valid and enforceable contracts.

65.     Plaintiffs and Class members fully performed their obligations under the

agreements.

66.     Defendants have contractual duties to comply with the terms and conditions of

these agreements.  The agreements obligate Defendants, among other things, to provide Plaintiffs

and Class members with audited financial statements pertaining to the Funds by April 30, 2018

(for 2017) and by April 30, 2019 (for 2018).

67.     Defendants breached the agreements with Plaintiffs and Class members by failing

to provide audited financial statements pertaining to the Funds by April 30, 2018 (for 2017) and

by April 30, 2019 (for 2018).  Nor have Defendants provided Fund investors with audited 2017 or 2018 financial statements at any other time.

68.     Defendants' breaches deprived Plaintiffs and Class members of information and knowledge that could or would have allowed them to exercise available remedies to avoid or mitigate potential investment losses in the Funds.

69.     As a direct and proximate result of the contractual breaches, Plaintiffs and Class members have suffered and continue to suffer economic losses in an amount to be determined according to proof at trial.

70.     Plaintiffs and Class members seek an order compelling Defendants to perform their contractual duties by turning over the audited 2017 and 2018 financial statements they are contractually mandated to furnish.

## Count II
## Breach of Fiduciary Duty

71.     Plaintiffs hereby incorporate each preceding and succeeding paragraph as though fully set forth herein.

72.     Defendants, as the general partner and its controllers, owed fiduciary duties to Plaintiffs and Class members, as limited partners in the Funds.

73.     Defendants owed fiduciary duties of loyalty and care, including a duty of candor, to Plaintiffs and Class members by consequence of taking custody of Plaintiffs' and Class members' funds for the stated purpose of investing them.

74.     Defendants breached their fiduciary duties, including their duty of candor, to Plaintiffs and Class members by, among other things, failing to provide them with timely and accurate financial statements regarding the Funds in which they invested or to otherwise inform

them of the true financial condition of those Funds.

75.    As a direct and proximate result of these breaches, Plaintiffs and Class members have suffered and continue to suffer economic losses in an amount to be determined according to proof at trial.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, respectfully request that the Court:

A.    Determine that this action is a proper class action, certify Plaintiffs as representatives of the Class under Rule 23 of the Federal Rules of Civil Procedure and Plaintiffs' counsel as counsel for the Class, and direct that notice of this action be given to the Class;

B.    Award Plaintiffs and the Class compensatory damages against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' violations in an amount to be determined at trial;

C.    Award Plaintiffs and the Class rescission or a rescissionary measure of damages;

D.    Award Plaintiffs and the Class pre-judgment and post-judgment interest;

E.    Grant Plaintiffs and the Class appropriate equitable relief, including an order compelling Defendants to provide the audited financial statements at issue;

F.    Award Plaintiffs and the Class their costs of suit, including reasonable attorneys' fees as provided for by law; and

G.    Granting such other and further relief as the Court may deem just and proper.

IX.     **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs, on their own behalf and on

behalf of the Class, demand a trial by jury on all issues so triable.

Dated: August 2, 2019                    Respectfully submitted,

                                         /s/ *Adam L. Rosen*
                                         Adam L. Rosen
                                         **ADAM L. ROSEN PLLC**
                                         2-8 Haven Avenue, Suite 220
                                         Port Washington, NY 11050
                                         Telephone: (516) 407-3756
                                         Email: adam.rosen@alrcounsel.com

                                         **GIRARD SHARP LLP**
                                         Daniel C. Girard (*pro hac pending*)
                                         Jordan Elias (*pro hac pending*)
                                         Adam E. Polk (*pro hac pending*)

                                         711 Third Ave, 20th Floor
                                         New York, NY 10017
                                         Telephone: (212) 798-0136
                                         Facsimile:  (212) 557-2952
                                         Email: dcg@girardgibbs.com
                                         Email: je@girardgibbs.com
                                         Email: aep@girardgibbs.com

                                         601 California Street, Suite 1400
                                         San Francisco, CA 94108
                                         Telephone:  (415) 981-4800
                                         Facsimile:  (415) 981-4846

                                         **GIBBS LAW GROUP**
                                         David Stein (*pro hac pending*)
                                         Kyla Gibboney (*pro hac pending*)
                                         505 14th Street, Suite 1110
                                         Oakland, CA 94612
                                         Telephone: (510) 350-9715
                                         Email: ds@classlawgroup.com
                                         Email: kjg@classlawgroup.com

                                         *Attorneys for Plaintiff*